# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES LAMONT ESTES,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>Defendant.<br>_____/ | Case No. 1:22-cv-01309-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.     INTRODUCTION

Plaintiff Charles Lamont Estes ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.     FACTUAL BACKGROUND

Plaintiff was born on October 30, 1965, and has at least a high school education. (Administrative Record ("AR") 24, 63, 71, 81, 95, 217, 222.)  On August 31, 2020, Plaintiff protectively filed claims for DIB and SSI payments, alleging disability beginning on September 25, 2019, due to depression, pseudofolliculitis barbae (facial scars), anxiety, suspiciousness, social

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 9.)

relations disorder, tension headaches, gastroesophageal reflux disease (GERD), and post-traumatic stress disorder (PTSD).  (AR 16, 63, 71, 82, 87, 96, 101, 123, 221.)

**A.    Relevant Medical Evidence[2]**

At a November 2020 telehealth visit, Plaintiff complained of "tension headaches and throbbing sensation." (AR 474.)  He attributed them to stress and to side effects of his psychiatric medications. (AR 474.)  A CT study of Plaintiff's brain was ordered. (AR 475.)

In February 2021, Plaintiff complained of headaches on the right side occurring mainly in the mornings upon awakening, but sometimes in the afternoon and evenings as well. (AR 530.)  He stated that his headaches cause nausea, photophobia, and occasional dizziness, and are described as a "throbbing, pulsating pain" that is occasionally relieved by sleep. (AR 530.)  They occur two to three times per week, usually lasting hours, and "seem to be becoming worse in intensity." (AR 530.)  A physical examination was normal, and Plaintiff denied any speech difficulty, gait disturbance, lateralized weakness, extremity parasthesias, and eye pain. (AR 530, 533.)  A CT study performed that same month showed a 3 mm hyperdense focus medial right frontal lobe. (AR 614.)  Plaintiff was prescribed ibuprofen and migraine medication. (AR 620.)

Plaintiff presented for a telehealth visit in April 2021. (AR 510–13.)  He complained of continued headaches. (AR 510.)  An MRI of Plaintiff's brain taken that month was normal. (AR 517.)

**B.    Plaintiff's Statement**

In October 2020, Plaintiff completed an "Adult Function Report." (AR 227–34.)  Plaintiff stated that he lives in transitional housing for homeless veterans. (AR 227.)  He described suffering from tension headaches, among other ailments. (AR 227.)  When asked what kinds of things he does on an average day, Plaintiff responded that he has difficulty getting out of bed and spends the majority of the day indoors. (AR 228.)  He cleans the common area kitchen and bathroom and does laundry once per week. (AR 229.)  Plaintiff reports he can shop for essentials and does so once per week. (AR 230.)  He states he has become a "social recluse" and has difficulty concentrating. (AR

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

231, 232.)

**C.      Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on October 14, 2020, and again on reconsideration on January 29, 2021.  (AR 16, 111–15, 123–28.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 129–44.)  At a hearing held on August 11, 2021, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions.  (AR 35–54.)

   **1.      Plaintiff's Testimony**

Plaintiff testified that he is in a program for homeless veterans and lives in duplex with three roommates.  (AR 35.)  He has a driver's license and drives twice a week for short distances.  (AR 36.)  According to Plaintiff, he experiences "pretty severe" headaches.  (AR 43, 53.)  At the duplex, Plaintiff is responsible for cleaning up his own room and the common areas as he uses them.  (AR 44.)  He makes cold cut sandwiches and microwaves simple meals.  (AR 44.)  Plaintiff testified that he does his own laundry.  (AR 44.)  He showers a couple times a week.  (AR 51, 52.)

   **2.      Vocational Expert's Testimony**

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as a customer service representative, data entry clerk, and telephone solicitor.  (AR 56.)  The ALJ asked the VE to consider a person of Plaintiff's age, education, and past work history.  (AR 56.)  The VE was also to assume this person could perform work at all exertional levels, but the work should be in a moderate or lower noise environment.  (AR 56.)  Further, the work should be limited to simple, routine, and repetitive tasks involving only simple, work-related decisions with few, if any, workplace changes.  (AR 56.)  In addition, the work should require quota-based tasks as opposed to any type of production requirements.  (AR 56–57.)  Finally, the work should require no more than incidental contact with coworkers, meaning no tandem tasks and no contact with the public.  (AR 57.)  The VE testified that such a person could not perform Plaintiff's past work, but could perform other, medium jobs in the national economy with a specific vocational preparation (SVP)[3] of 2, such

---

[3] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in

as equipment cleaner, Dictionary of Operational Titles (DOT) code 381.687-022; laundry worker, DOT 361.685-018; and floor waxer, DOT code 381.687-034. (AR 57.) The VE further testified that being off task more than 10% of the workday, or missing two or more days of work per month, is work preclusive. (AR 57–58.)

Plaintiff's attorney asked the VE to consider a person with the same limitations as in the first hypothetical, but with the additional limitations of no contact with coworkers and seldom to little contact with supervisors. (AR 59.) The VE testified that there would be no work such a person could perform. (AR 59.)

**D.     The ALJ's Decision**

In a decision dated August 19, 2021, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 16–26.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520, 416.920. (AR 18–26.) The ALJ decided that Plaintiff met the insured status requirements of the Act through December 31, 2024, and he had not engaged in substantial gainful activity since September 25, 2019, the alleged onset date (step one). (AR 18–19.) At step two, the ALJ found Plaintiff had the following severe impairments: headaches; major depressive disorder; posttraumatic stress disorder; and anxiety. (AR 19.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 19–21.)

The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[4] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.");

---

the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. *See* TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

4

*see also* 20 C.F.R.§ 416.920(a)(4). The ALJ determined Plaintiff had the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is limited to a moderate or lower noise environment. [Plaintiff] is limited to simple, routine and repetitive tasks; involving only simple, work-related decisions; with few, if any, work place changes; requiring quota based tasks as opposed to production requirements. [Plaintiff] is further limited to incidental contact with coworkers (no tandem tasks) and no contact with the public.

(AR 21–24.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" they rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 23.) The ALJ determined that Plaintiff was unable to perform his past relevant work (step 4), but he was not disabled because, given his RFC, he could perform a significant number of other jobs in the national economy, specifically equipment cleaner, laundry worker, and floor waxer (step 5). (AR 25.) The ALJ concluded Plaintiff was not disabled at any time from September 25, 2019, through the date of their decision. (AR 25–26.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on August 17, 2022. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

### III.  LEGAL STANDARD

**A.  Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.   Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a

preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends that the ALJ erred in, *inter alia*, failing to articulate clear and convincing

reasons for discounting Plaintiff's statements regarding his headache symptoms. (Doc. 11 at 6–9; Doc. 14 at 2–3.) The Acting Commissioner responds that the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations. (Doc. 13 at 7–12.) The Court agrees with Plaintiff that the ALJ erred in the evaluation of Plaintiff's headache-related complaints and will remand the case on that basis.

**A.    Legal Standard**

In evaluating the credibility of a claimant's testimony regarding their impairments, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that the impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[5] *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which they complain. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most

---

[5] The Court disagrees with the Acting Commissioner that a lesser legal standard applies. (*See* Doc. 13 at 7 n.3.)

demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because they are unsupported by objective medical evidence.  *Reddick*, 157 F.3d at 722*; Bunnell v. Sullivan*, 947 F.2d 341, 343, 345 (9th Cir. 1991).  If the ALJ finds the claimant's testimony not credible, the ALJ "must specifically make findings which support this conclusion."  *Bunnell*, 947 F.2d at 345.  General findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'"  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834)).  *See also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (The ALJ must set forth "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").

**B.     Analysis**

### 1.     The ALJ Erred in Discounting Plaintiff's Subjective Headache-Related Complaints

Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record." (AR 23.)  Because the ALJ did not make any finding of malingering, the ALJ was required to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom allegations.  *Vasquez*, 572 F.3d at 591.

In discrediting Plaintiff's statements regarding his headaches, the ALJ stated that "the intensity and frequency do not appear to be disabling" and that "[Plaintiff] has described daily activities which are not limited to the extent one would expect, given the complaints or disabling symptoms and limitations."  (AR 23.)  These two statements comprise the entire discussion regarding Plaintiff's headache-related complaints, and it is insufficient.  It is not clear to the Court on what evidence the ALJ is relying when concluding that Plaintiff's headaches are lacking in intensity and frequency and that his daily activities are "not limited to the extent one would expect."  Nor does the ALJ identify which of Plaintiff's statements regarding his headaches that they found to be less

9

than credible. Such a nexus is required because, without that specification, the Court is left to speculate as to which statements the ALJ intended to discount and what evidence undermines those statements—which the Court may not do. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494–95 (9th Cir. 2015) ("We cannot review whether the ALJ provided specific, clear and convincing reasons for rejecting [the claimant]'s pain testimony where, as here, the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony . . . . In sum, we cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.") (emphasis in original). *See also Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (explaining that we may not "take a general finding—an unspecified conflict between [c]laimant's testimony . . . and her reports to doctors—and comb the administrative record to find specific conflicts"). While the Ninth Circuit does not "require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits," the ALJ must do more than what was done here, which consisted of "offering non-specific conclusions" that Plaintiff's statements regarding his headaches were "not entirely consistent" with the record. *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

Moreover, contrary to the ALJ's finding, the medical evidence tends to show that Plaintiff's headaches were both intense and frequent. Plaintiff characterized his headaches as "throbbing" (AR 474, 530), a "pulsating pain" (AR 530), "becoming worse in intensity" (AR 530), "pretty severe" (AR 43, 53), and accompanied by nausea, photophobia, and dizziness (AR 530). A CT study showed a 3 mm hyperdense focus medial right frontal lobe. (AR 614.) Plaintiff reported that his headaches occurred two to three times per week and lasted for hours. (AR 530.)

Plaintiff's daily activities are also not as inconsistent as the ALJ suggests. For example, the fact that Plaintiff drives twice per week for short distances, prepares simple meals, and does his own laundry does not necessarily cast doubt on his testimony that he suffers severe headaches with nausea, photophobia, and dizziness multiple times per week. Similarly, Plaintiff's testimony that responded that he has difficulty getting out of bed and spends the majority of the day indoors (*see* AR 228, 231, 232) appears consistent with his headache-related complaints.

The Acting Commissioner asserts that Plaintiff's "minimal complaints" and "lack of

compliance with treatment" are permissible reasons for the ALJ to discredit Plaintiff's headache-related subjective symptom testimony. (*See* Doc. 13 at 9–10.) But the ALJ did not give those reasons (*see* AR 23), and the Court's review is limited to the rationale provided by the ALJ. It cannot consider post-hoc rationalizations and inferences advanced by the Acting Commissioner to justify the ALJ's rejection of Plaintiff's headache-related complaints. *See Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (noting that a reviewing court "is constrained to review the reasons the ALJ asserts"); *Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency.").

Because the ALJ did not specifically identify what parts of the record conflicted with which of Plaintiff's headache-related statements, they failed to set forth clear and convincing reasons supported by substantial evidence in the record. The credibility determination is therefore erroneous.

### 2. The ALJ's Error Was Not Harmless

The Court now turns to the analysis of whether this error by the ALJ was harmless. The Ninth Circuit "ha[s] long recognized that harmless error principles apply in the Social Security Act context." *Molina*, 674 F.3d at 1115 (citing *Stout*, 454 F.3d at 1054); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 932 n.10 (9th Cir. 2014) (stating that the harmless error analysis applies where the ALJ errs by not discharging their duty to develop the record). As such, "the court will not reverse an ALJ's decision for harmless error." *Tommasetti*, 533 F.3d at 1038 (citing *Robbins*, 466 F.3d at 885).

An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (stating that an error is also harmless "'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity'") (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)). "In other words, in each case [courts] look at the record as a whole to determine whether

11

the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. "[T]he nature of [the] application" of the "harmless error analysis to social security cases" is "fact-intensive—'no presumptions operate' and '[courts] must analyze harmlessness in light of the circumstances of the case.'" *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1121). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki*, 556 U.S. at 409 (citations omitted).

The record establishes that the ALJ's error was not harmless. Had the ALJ credited Plaintiff's statements related to his headaches and assessed a more restrictive RFC, the disability determination may have been different. (*See, e.g.,* AR 57–58 (VE testimony that being off task more than 10% of the workday, or missing two or more days of work per month, is work preclusive.).) Thus, the error was not "inconsequential to the ultimate nondisability determination," *Molina*, 674 F.3d at 1115, and was not harmless.

**C.      The ALJ's Harmful Error Warrants Remand for Further Proceedings**

Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is "to remand to the agency for additional investigation or explanation." *Treichler*, 775 F.3d at 1099 (citations omitted). The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100–01 (citations omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule"). In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted). As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id.* (citations omitted). Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689 (citation omitted).

The Court finds, and Plaintiff concedes (*see* Doc. 11 at 9, 14; Doc. 14 at 4), that the "credit-

as-true" exception to the "ordinary remand rule" is inapplicable in this case because additional administrative proceedings would be useful. If the ALJ changes its evaluation of Plaintiff's subjective complaints, any warranted additional limitations should be incorporated in the RFC. Conversely, there may be clear and convincing reasons the ALJ can offer for discounting the testimony. *See Voisard v. Berryhill*, No. 2:17–CV–1023-EFB, 2018 WL 4488474, at *5 (E.D. Cal. Sept. 19, 2018) ("That the ALJ failed to provide sufficient reasons for discounting plaintiff's subjective testimony in this instance does not compel a finding that he is unable to do so.").

Even if the ALJ decides to credit as true some or all of Plaintiff's symptom statements and adjust their RFC determination for Plaintiff, the ALJ may still conclude that Plaintiff is not disabled because he has the RFC to perform the requirements of other work that exists in significant numbers in the national economy. The ALJ may also elect to further develop the record, if deemed necessary. Further proceedings would therefore be useful to allow the ALJ to resolve this "outstanding issue[ ]" before a proper disability determination can be made. *See Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988).

On remand, the ALJ should reevaluate Plaintiff's symptom testimony, specifically with respect to his headaches, and address any necessary changes to the RFC determination. If the ALJ again discounts Plaintiff's subjective symptoms, they can then provide an adequate discussion of the specific testimony they are discounting and the specific evidence that contradicts that testimony. *See Payan v. Colvin*, 672 F. App'x 732, 733 (9th Cir. 2016). The ALJ must also reevaluate their conclusions at steps four and five of the disability determination in light of any changes to Plaintiff's RFC.

**D.     The Court Declines to Determine Plaintiff's Remaining Assertions of Error**

As the Court finds that remand is appropriate for the ALJ to reconsider Plaintiff's headache-related complaints and reassess Plaintiff's RFC, the Court need not address Plaintiff's allegations of error concerning the ALJ's current RFC assessment and its failure to account for limitations set forth in Plaintiff's Veterans Affairs disability evaluation and those described by case manager Molly McNair (*see* Doc. 11 at 10–14; Doc. 14 at 3–4). *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach

[plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## V.    CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore VACATED, and the case is REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Charles Lamont Estes and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:  **November 27, 2023**               /s/ *Sheila K. Oberto*
                                             UNITED STATES MAGISTRATE JUDGE